UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| BARBARA METZ AND DONALD METZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| WYETH LLC; | § | CASE NO. _____ |
| SCHWARZ PHARMA, INC.; | § | |
| ACTAVIS ELIZABETH LLC, | § | |
| INDIVIDUALLY AND  D/B/A PUREPAC | § | |
| PHARMACEUTICALS | § § | |
| Defendants. | § | |

_____/

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, BARBARA METZ and DONALD METZ, by and through their undersigned counsel and for their causes of action against Defendants, Wyeth LLC, Schwarz Pharma, Inc., Actavis Elizabeth LLC, Individually and D/B/A Purepac Pharmaceuticals, and allege the following:

### I. PARTIES

1.     Plaintiffs, BARBARA METZ and DONALD METZ, are individual residents and citizens of Douglas County, Colorado.

2.     Defendant, Wyeth LLC (hereinafter referred to as "Wyeth") is a Delaware corporation with its principal place of business at Five Giralda Farms, Madison, NJ 07940. Wyeth, LLC is a wholly owned subsidiary of Pfizer, LLC. Pfizer, LLC is wholly owned by Pfizer, Inc. References to Wyeth include Wyeth individually, Wyeth Inc.,

1

Wyeth Pharmaceuticals, Inc. and collectively all divisions and/or subsidiaries, as well as successor-in-interest to A.H. Robins, Inc., American Home Drugs Corporation and ESI, Lederle, Inc.   Defendant, Wyeth may be served through its registered agent: C T Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

3.   Defendant, Schwarz Pharma, Inc., ("Schwarz") is a Delaware corporation, with its principal place of business in Mequon, Wisconsin.   References to Schwarz include Schwarz individually and collectively all of its predecessors in interest and divisions. Defendant Schwarz may be served through its registered agent: Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.   Defendant, Actavis-Elizabeth LLC, (hereinafter referred to as "Actavis") is a Delaware corporation with its principal place of business in New Jersey.   Actavis is a wholly owned subsidiary of Actavis, Inc. and is the successor to Purepac Pharmaceutical, Inc., which is no longer in existence.   Actavis, Inc. is being sued herein as the owner of Actavis. Hereafter, Actavis, Actavis, Inc. and Purepac Pharmaceutical, Inc. will be collectively referred to as "Actavis." Defendant Actavis and may be served with process through its registered agent: United Corporate Services, Inc., 9200 South Dadeland Blvd., Suite 508, Miami Fl 33156.

5.   Defendants, Wyeth, Schwarz, and Actavis, identified supra, inclusive, and each of them, may be referred to in this Complaint collectively as the "Drug Company Defendants".

6.   At all times material hereto, the Drug Company Defendants were engaged in the business of testing,   developing, manufacturing, labeling, marketing, distributing,

promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide and/or metoclopramide HCl tablets in the State of Florida and in interstate commerce. The Drug Company Defendants are subject to the jurisdiction and venue of this Court.

## II. VENUE AND JURISDICTION

7.     Both jurisdiction and venue are proper in the Middle District of Florida.   The Defendants conduct or have conducted business activity in Hernando County, Florida and the Defendants have distributed products throughout Hernando County, Florida. Mrs. Metz was prescribed, purchased and consumed the Defendants' products in Hernando County, Florida.

8.     Jurisdiction is based on complete diversity between the Plaintiffs and all of the Defendants pursuant to 28 U.S.C. § 1332.

9.     Venue is proper as to causes of action against all Defendants because:

   a. A substantial part of the cause of action accrued in the State of Florida in that Mrs. Metz received and consumed the Defendants' pharmaceutical products in Hernando County, Florida and sustained injury in Hernando County, Florida.

   b. All of the Defendants have directed their products into Hernando County, Florida.

   c. All of the Defendants have sold their products in Hernando County, Florida.

   d. Hernando County sits in the Middle District of Florida.

10.    The amount in controversy exceeds $75,000.00.

### III. FACTUAL BACKGROUND REGARDING REGLAN/METOCLOPRAMIDE

11.    This case involves the long term ingestion of Reglan/metoclopramide by the Plaintiff as prescribed by her physician(s).

12.    Reglan/metoclopramide is a prescription medication classified as a GI stimulant, antiemetic and Dopaminergic blocking agent. It is indicated for short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

13.    Reglan/metoclopramide is indicated for treatment use of no greater than twelve (12) weeks; however, Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and or esophageal reflux for durations that exceeded twelve (12) weeks.

14.    Patients who use Reglan/metoclopramide for long periods (exceeding twelve (12) weeks) are at a significant and unreasonably dangerous increased risk of developing a severe and permanent neurological movement disorder, known as tardive dyskinesia and/or akathisia.

15.    Other serious side effects that may be caused by ingesting Reglan/metoclopramide for longer periods of time include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

16.    Patients who use Reglan/metoclopramide for long periods (greater than 12 weeks) who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

17.    Tardive Dyskinesia and Akathisia are serious side effects associated with the ingestion of Reglan/metoclopramide and are debilitating neurological disorders that often result in involuntary and uncontrollable movements of the head, neck, face, arms, legs and/or trunk, as well as, involuntary facial grimacing and tongue movements, including tongue thrusting, tongue chewing and/or other involuntary movements.

18.    Presently, there is no known cure for Tardive Dyskinesia or Akathisia.

## IV. ALLEGATIONS COMMON TO ALL COUNTS

19.    Plaintiffs bring this action for the purpose of recovering damages for the personal injuries Mrs. Metz has suffered as a result of being prescribed and ingesting Reglan, metoclopramide and/or metoclopramide HCl (hereinafter referred to as "Reglan/metoclopramide").

20.    In or around October 2006, Mrs. Metz' physician prescribed Reglan/Metoclopramide at a dosage of 10mg to treat abdominal pain/digestive problems. Mrs. Metz continued to take Reglan/metoclopramide through and until approximately August 2007.

21.    The active ingredient, metoclopramide and metoclopramide HCl, is a dopamine antagonist.

22.    Upon information and belief, in prescribing the Reglan/metoclopramide to Mrs. Metz on a long-term basis, her prescribing doctor relied upon information published in the package inserts and/or the Physicians' Desk Reference (hereinafter referred to as "PDR") or otherwise disseminated by the Reference Listed Drug Company (hereinafter

referred to as "RLD") and/or the New Drug Application Holder (hereinafter referred to as "NDA Holder").

23. Mrs. Metz ingested the Reglan/metoclopramide as prescribed.

24. Mrs. Metz used the pharmaceutical drugs Reglan/metoclopramide without substantial change in the condition of the drugs between the time of design and manufacture of the drugs and the time she used the drugs as directed.

25. Mrs. Metz' long-term ingestion of the Reglan/metoclopramide caused her injuries.

26. Mrs. Metz was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR, RLD, or by the NDA Holders.

27. In or around September 2007, Mrs. Metz was exhibiting abnormal movements which have since been linked to her use of Reglan/metoclopramide.

28. Mrs. Metz' use of Reglan/metoclopramide, as prescribed, resulted in overexposure to the drugs which have caused her to suffer serious, permanent and disabling injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems, specifically Tardive Dyskinesia, a severe and often permanent disfiguring neurological movement disorder.

29. Mrs. Metz' serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the

potential effects of exposure to and long-term ingestion of Reglan/metoclopramide to the medical community, Mrs. Metz, and other foreseeable users of the drug.

30.    Mrs. Metz has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain, suffering, psychological injury and other injuries and damages doe to the prescription and ingestion of this drug.

31.    Recognizing the inadequate nature of the Defendants' label and warnings, in February 2009 the United States Food and Drug Administration (hereinafter referred to as "FDA") issued an advisory requiring the addition of a **Boxed Warning** for Reglan/metoclopramide.  This new warning, appearing at the top of the label, spells out that "Chronic treatment with metoclopramide can cause tardive dyskinesia, a serious movement disorder that is often irreversible . . . ."  Additionally, the new Boxed Warning now tells physicians and patients that "Prolonged treatment (greater than 12 weeks) with metoclopramide should be avoided in all but rare cases . . . ."  Finally, the FDA is now requiring that manufacturers/Defendants implement a Risk Evaluation and Mitigation Strategy because the FDA has determined that the use of Reglan/metoclopramide "pose[s] a serious and significant public health concern requiring the distribution of a Medication Guide."  This Medication Guide, setting out all the risks of the drug and to be given to all users "is necessary for the patients' safe use of Reglan (metoclopramide) . . . ."  Unfortunately, neither this Boxed Warning nor the Medication Guide was available to Mrs. Metz.

## V. DEFENDANTS' WRONGFUL CONDUCT

32.    This case involves Defendants' failure to warn doctors and patients of information within their knowledge or possession which indicated that the subject Reglan/metoclopramide, when taken for long periods of time, caused serious, permanent and debilitating side effects, including tardive dyskinesia.

33.    Defendants jointly and severally marketed, manufactured and distributed Reglan/metoclopramide and encouraged the long term use of these drugs, misrepresented the effectiveness of these drugs and concealed the drug's dangerous side effects.

34.    Reglan/metoclopramide is indicated as short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

35.    Reglan/metoclopramide is indicated for use for no greater than twelve weeks; however, Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and/or esophageal reflux for durations that exceed twelve weeks.

36.    Patients who use Reglan/metoclopramide for long periods are at a significantly increased risk of developing a severe and permanent neurological movement disorder.

37.    Other serious side effects caused by ingesting Reglan/metoclopramide for long periods include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

38.    Patients who use Reglan/metoclopramide for long periods who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

39.    Tardive dyskinesia, one of the serious side effects associated with the ingestion of

Reglan/metoclopramide is a debilitating neurological disorder that often results in

involuntary and uncontrollable movements of the head, neck, face, arms, legs and trunk,

in addition to facial grimacing, uncontrollable tongue movements and other involuntary

movements.  Presently, there is no cure for tardive dyskinesia.

40.    Plaintiff, BARBARA METZ, diagnosed with tardive dyskinesia, caused by the

ingestion of metoclopramide, is permanent.

41.    Wyeth is the successor in interest to A.H. Robins Company, Inc., which first

obtained approval by the United States Food and Drug Administration (hereinafter

referred to as "FDA") to distribute metoclopramide, under the brand name "Reglan"

under the FDA's New Drug Application (NDA)[1] schema in 1983.

42.    Defendant, Wyeth's predecessor-in-interest, A.H. Robins Company, Inc. expressly

warranted to some physicians that Reglan/metoclopramide is safe for long-term use.

43.    A.H. Robins knew that its warranties regarding safety for long-term use would be

relied upon by ordinary, reasonable and prudent physicians who would share that

information with other physicians in their communities and that eventually physicians

would come to rely on A.H. Robins' express warranties about Reglan/metoclopramide's

safety for long-term use.

44.    A.H. Robins' express warranties about the safety of Reglan/metoclopramide for

long-term use were false and intentionally and negligently misleading.

45.    As successor-in-interest to A.H. Robins Company, Inc., Wyeth is legally

---

[1]   Upon information and belief, Wyeth is the holder of multiple NDAs for Reglan, metoclopramide and

responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made by A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/metoclopramide, and all liabilities stemming there from.

46.    Wyeth manufactured, marketed and distributed Reglan, metoclopramide, and/or metoclopramide HCl through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania and through its ownership of "ESI."[2]

47.    Wyeth knew that it must fully disclose material safety data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling, including warnings about risks and side effects, and test results involving animal studies, clinical studies, and the drug's bioavailability.

48.    Wyeth knew that the data and information would be relied upon by the medical community, physicians, Plaintiff and other foreseeable users of Reglan/metoclopramide once the NDA was approved and Wyeth was listed as the Reference Listed Drug Company for the drug.

49.    Wyeth intentionally and negligently disseminated misleading information to physicians across the county, through the PDR, about the risks of long-term ingestion of Reglan/metoclopramide and the increased risk of extrapyramidal side effects, including tardive dyskinesia.

50.    Defendant, Schwarz purchased from Wyeth the rights and *liabilities* associated

---

metoclopramide HCl.
[2]  Upon information and belief, ESI was a former subsidiary which merged into Wyeth on or about December 15, 1998.

with Reglan/metoclopramide, the terms of which, upon information and belief, obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan/metoclopramide.

52. Defendant, Schwarz entered into an indemnification agreement with Wyeth over the purchase of the innovator, Wyeth's, Reglan, which included disclosure of clinical studies on Reglan/metoclopramide that were not publicly available.[3]

53. Because Defendant, Schwarz acquired Defendant, Wyeth's Reglan/metoclopramide assets and liabilities while Wyeth was involved in on-going litigation regarding Reglan/metoclopramide, and nevertheless agreed to indemnify Wyeth against all claims related to the ingestion of the drug, Schwarz knew or should have known that the NDA label for Reglan/metoclopramide (Wyeth's label) misrepresented the safety of the drug, withheld warnings of the known side effects of the drug, and knew or should have known of the safety issues surrounding it.

54. Under the FDA schema, Wyeth was and is the Reference Listed Drug Company (RLD), under a specific NDA, for Reglan/metoclopramide.

55. Under the FDA schema, Defendant, Schwarz was and remains the RLD and/or NDA Holder for Reglan/metoclopramide.

56. At all times material hereto, Defendants, Wyeth and Schwarz as the NDA Holder and/or RLD companies, were aware of the serious side effects caused by Reglan/metoclopramide including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual

---

[3]  Plaintiffs do not have information regarding the maximum amount of liability under the defendants'

disturbances and interference with drug metabolism.

57.    Defendants, Wyeth and Schwarz have a duty to ensure their warnings to the medical community are accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

58.    Defendants, Wyeth and Schwarz represented that Reglan/metoclopramide was safe for use to treat gastritis/gastroesophageal reflux knowing that the drug was not safe for that purpose and was dangerous to the health and body of Plaintiff.

59.    Defendants, Wyeth and Schwarz represented that Reglan/metoclopramide caused minimal side effects knowing that the drug caused central nervous system side effects, and extrapyramidal symptoms, among other side effects, far more frequently than represented.

60.    Defendants,  Wyeth and Schwarz had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan/metoclopramide for long-term use that was not safe for patients.

61.    Defendants, Wyeth and Schwarz had, through their own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan/metoclopramide received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

62.    Defendants, Wyeth and Schwarz also had actual knowledge, through research by independent investigators, that the risk of tardive dyskinesia and other extrapyramidal

indemnification agreement.

side effects of Reglan/metoclopramide in patients who receive the drug for 12 weeks or longer is approximately 100 times greater than disclosed in package inserts and the PDR.

63.   Defendants, Wyeth and Schwarz knew or through the exercise of reasonable care should have known, that many patients who use Reglan/metoclopramide are not able to effectively metabolize it and that as a foreseeable consequence of their inability to effectively metabolize, those patients have a greater risk of developing serious and permanent injuries.

64.   Defendants, Wyeth and Schwarz had actual knowledge of facts which demonstrated that representations in the Reglan/metoclopramide package insert, the PDR and literature they distributed to physicians were false and misleading.

65.   Defendants, Wyeth and Schwarz failed to correct their monograph and/or disclose that knowledge to the medical community, Plaintiff, BARBARA METZ, and other foreseeable users.

66.   It is the public policy of the United States and of this state, as reflected in the Hatch-Waxman Act, to encourage the availability of cheaper, generic drug products that are therapeutically equivalent to name brand products and to encourage the substitution, as appropriate, of such generic products for name brand products in patients' medical therapy.

67.   Defendants, Wyeth and Schwarz as prescription drug manufacturers and/or distributors, knew or should have realized that so-called "drug product selection laws," enacted in every state, including this state, authorize or require a prescription for a drug identified by product brand name or by generic name to be filled, subject to certain

limitations, with a generic drug product that is therapeutically equivalent to the name brand drug product.

68.    Defendants, Wyeth and Schwarz knew or ought to have realized that generic drug manufacturers customarily copy verbatim the package insert for the name brand prescription drug product to give the impression that the information contained in the package inserts accompanying their own generic prescription drugs is accurate and not misleading.

69.    Defendants, Wyeth and Schwarz knew or ought to have known that the generic drug manufacturers also typically rely upon the marketing efforts of the name brand manufacturer to generate sales of their own products.

70.    Defendants, Wyeth and Schwarz knew or ought to have realized that physicians commonly consult the information disseminated by the name brand manufacturer, in the PDR or otherwise, and rely upon that information in their decisions concerning the prescribing of those products for their patients.

71.    Defendants, Wyeth and Schwarz knew of should have known, specifically, that physicians would rely upon the information disseminated to them by the name brand manufacturer, regardless of whether the prescriptions might be filled with either the name brand product, Reglan, or generic Reglan/metoclopramide, and that many patients, in accordance with those prescriptions, would be likely to ingest generic Reglan/metoclopramide.

72.    Defendant, Actavis, submitted an Abbreviated New Drug Application (ANDA) to the FDA, based on representations made by the RLD companies, requesting permission

to manufacture, market, and distribute generic Reglan/metoclopramide.

73.   Under the ANDA process, the Code of Federal Regulations *required* Actavis to submit labels for Reglan/metoclopramide initially identical in all material aspects to the reference listed drug label.

74.   Under the Code of Federal Regulations, Actavis had a duty to ensure its Reglan/metoclopramide warnings to the medical community were accurate and adequate, to conduct post market safety surveillance, to review all adverse drug event information, and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan/metoclopramide.

75.   Under the Code of Federal Regulations, if Actavis discovers information in the course of the fulfillment of it's duties as outlined above, it must report that information to the medical community, Plaintiff and other foreseeable users of Reglan/metoclopramide to ensure that their warnings are continually accurate and adequate.

76.   Defendant, Actavis, failed to investigate the accuracy of its metoclopramide and/or metoclopramide HCl drug labels.

77.   Defendant, Actavis, failed to review the medical literature for the metoclopramide drug and/or metoclopramide HCl drug.

78.   Defendant, Actavis, relied upon the name brand manufacturer and the referenced listed drug companies to review the aforementioned medical literature for Reglan/metoclopramide.

79.   Under the FDA scheme, if the FDA approves a label change as requested by an ANDA holder, the NDA holder (also referred to as the RLD company) must also amend

its label.

80.   Defendant, Actavis, failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing Reglan/metoclopramide.

81.   All Defendants to this action who have manufactured, marketed and distributed generic Reglan/metoclopramide have failed in the same manner as Defendant, Actavis.

82.   Defendants disseminated to physicians, through package inserts, the publication of the PDR, and otherwise, information concerning the properties and effects of Reglan/metoclopramide, with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.

83.   Defendants knew, or should have known through the exercise of reasonable care, that the package insert for Reglan/metoclopramide substantially understated the prevalence of acute and long-term side effects on ingesting the drug.

84.   Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

85.   Defendants owed a duty in all of their several undertakings, including the dissemination of information concerning Reglan/metoclopramide, to exercise reasonable care to ensure that they did not create unreasonable risks of personal injury to others.

86.   Reglan/metoclopramide was widely advertised by Defendants as a safe and

effective treatment of diabetic gastroparesis, gastroesophageal reflux disease (GERD) and other gastrointestinal disorders.

87.    Defendants failed to conduct and report post market safety surveillance on Reglan/metoclopramide.  Defendants failed to review all adverse drug event information[4] and to report any information bearing upon the adequacy and accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/metoclopramide.

88.    Defendants failed to monitor all relevant scientific literature related to Reglan/metoclopramide.

89.    Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/metoclopramide for long periods of time.

90.    Defendants failed to report data, *regardless of the degree of significance,* regarding the adequacy and/or accuracy of their warnings, efficacy or safety of Reglan/ metoclopramide.

91.    Defendants knowingly concealed from physicians material facts bearing on the interpretation of package insert disclosures that exposure to Reglan/metoclopramide can lead to tardive dyskinesia and other extrapyramidal side effects, that the risk is "believed" to increase with duration of therapy and total cumulative dose, and that therapy for longer than twelve weeks "cannot be recommended."

---

[4]    Defendants are required to review all adverse drug experience information obtained or otherwise received . . . from any source . . . including derived from postmarketing clinical investigations, postmarketing epidemiological/surveillance studies, reports from the scientific literature, and unpublished scientific reports. 21 C.F.R. § 317.80(b); *Mensing v. Wyeth, Inc., et al.,* Civil No. 07-3919 (DWF/SRN), 2008 WL 4724286, (D. Minn. Oct. 30, 2008).

92.   Defendants concealed the fact that earlier false information disseminated by A.H. Robins Company and/or Wyeth representing long-term Reglan/metoclopramide therapy to be reasonably safe, was unscientific and false.

93.   Defendants concealed the fact that Reglan/metoclopramide is a neuroleptic agent and dopamine antagonist, which can be expected to lead to tardive dystonia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation.

94.   Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroporesis and/or other gastric disorders with Reglan/metoclopramide for longer than twelve weeks is unlikely to be reasonably safe.

95.   Some or all of the other Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/metoclopramide products received clear notice of Wyeth's suppression of important safety information concerning Reglan/metoclopramide, yet despite this notice chose to ignore the information and join consciously in the suppression.

## VI. COUNT I -- NEGLIGENCE

96.   Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

97.   Defendants owed a duty to the general public and specifically to Plaintiffs to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Reglan/

metoclopramide at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Reglan/metoclopramide because as designed, it was capable of causing serious personal injuries such as those suffered by Plaintiff, BARBARA METZ, during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Reglan/metoclopramide because they failed to warn that, as designed, Reglan/metoclopramide was capable of causing serious personal injuries such as those suffered by Plaintiff, BARBARA METZ, during foreseeable use.

98. Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff, BARBARA METZ, in that Defendants:

   a. Failed to use due care in developing, testing, designing and manufacturing Reglan/metoclopramide so as to avoid the aforementioned risks to individuals when Reglan/metoclopramide was being used for treatment of patients;

   b. Failed to accompany their product with proper or adequate warnings regarding adverse side effects and health risks associated with the use of Reglan/metoclopramide and the comparative severity and duration of such adverse effects;

   c. Failed to accompany their product with proper or adequate rate of incidence or prevalence of permanent irreversible neurological damage;

   d. Failed to provide warnings that accurately reflected the symptoms, scope or severity of the side effects and health risks;

   e. Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Reglan/metoclopramide;

   f. Failed to provide adequate training or information to medical care providers for appropriate use of Reglan/metoclopramide;

   g. Failed to adequately warn consumers and medical prescribers (but instead actively encouraged the sale of Reglan/metoclopramide), about the following:

(1) that Reglan/metoclopramide should not be prescribed for more than twelve weeks; (2) that Reglan/metoclopramide can cause neuromuscular side effects, including, but not limited to, tardive dystonia; (3) that Reglan/metoclopramide should be discontinued in the face of involuntary facial, tongue, jaw, limb or trunk movements; and (4) that the health risks posed by Reglan/metoclopramide may become debilitating, difficult, and painful, necessitating lengthy and/or repeated visits to the doctor, clinic, or hospital;

h.   Failed to adequately test and/or warn about the use of Reglan/metoclopramide, including, without limitation, the possible adverse side effects and health risks caused by the use of Reglan/metoclopramide;

i.   Failed to adequately warn users, consumers and physicians about the severity, scope and likelihood of neurological damage and related dangerous conditions to individuals taking Reglan/metoclopramide; and

j.   Representing to physicians, including but not limited to BARBARA METZ' prescribing physician, that this drug was safe and effective for use.

99.     The Reglan/metoclopramide was in substantially the same condition when it was ingested by Plaintiff, BARBARA METZ, as it was in when it left the control of the Defendants.  Reglan/metoclopramide's capability to cause serious personal injuries and damages such as those suffered by Plaintiff, BARBARA METZ, was not due to any voluntary action or contributory negligence of Plaintiff.  The Reglan/metoclopramide was consumed by Plaintiff BARBARA METZ as directed and without change in its form or substance.

100.    Defendants' failure to exercise reasonable care in the design and/or marketing of Reglan/metoclopramide was a proximate cause of Plaintiff, BARBARA METZ' injuries and damages.  Plaintiffs seek all damages to which he may be justly entitled.

## VII. COUNT II -- STRICT LIABILITY

101.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully

set forth herein.

102.     Plaintiff, BARBARA METZ, claims that Defendants are liable to her under the theory of strict products liability.  Defendants were at all times relevant to this suit, and now are, engaged in the business of designing, manufacturing, testing, marketing, and placing into the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the Reglan/metoclopramide at issue in this lawsuit.   The Reglan/metoclopramide manufactured by Defendants reached Plaintiff, BARBARA METZ, without substantial change and was ingested as directed.   The Reglan/metoclopramide was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff, BARBARA METZ.

103.     Reglan/metoclopramide was unreasonably defective in design, considering the utility of the product and the risk involved in its use, because as designed, Reglan/metoclopramide could cause injuries such as those suffered by Plaintiff during foreseeable use.  This fact was known to Defendants at the time Reglan/metoclopramide was placed into the stream of commerce, but was not readily recognizable to an ordinary consumer, including Plaintiff.   Nonetheless, Defendants failed to warn that Reglan/metoclopramide as designed was capable of causing serious personal injuries such as those suffered by Plaintiff, BARBARA METZ, during foreseeable use. Such a failure to warn rendered the Reglan/metoclopramide unreasonably dangerously defective as marketed.

104.     The defective and unreasonably dangerous nature of Reglan/metoclopramide was a direct, proximate and producing cause of Plaintiff, BARBARA METZ' injuries and

damages.  Under strict products liability theories set forth in Restatement (Second) of Torts, Pharmaceutical Defendants are liable to Plaintiffs for all damages claimed in this case, including punitive damages.

## VIII. COUNT III -- BREACH OF WARRANTIES

105.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

106.    Defendants were at the time of the acts forming the basis of this lawsuit, and now are, merchants with respect to the Reglan/metoclopramide at issue in this lawsuit. Defendants marketed and promoted their Reglan/metoclopramide as safe and efficacious for its intended uses.  The Reglan/metoclopramide consumed by Plaintiff reached her without substantial change in its condition and was used by Plaintiff as intended by Defendants.    Defendants    expressly    and    impliedly    warranted    that    the Reglan/metoclopramide were not unreasonably dangerous and instead were merchantable and fit for its intended use by Plaintiff, BARBARA METZ.

107.    Defendants breached these warranties (both express and implied) as the Reglan/metoclopramide was not merchantable, was unfit for its intended use and was unreasonably dangerous when comparing the benefits to the risks associated with its use. Plaintiff, BARBARA METZ, was injured as a result of these breaches of warranties.

## IX. COUNT IV -- MISREPRESENTATION AND FRAUD

108.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

109.    Defendants, through their advertising, labeling, marketing, and sales/detail

persons, made significant representations, which were false, knowing that such representations were false and/or with reckless disregard for the truth or falsity of such representations, with the intent that Plaintiff rely on such material representations; Plaintiff, BARBARA METZ, acted in actual and justifiable reliance on such material misrepresentations and was injured as a result.

110.    In addition, and in the alternative if necessary, Defendants knowingly omitted and downplayed material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiff, BARBARA METZ, rely on Defendants' misrepresentations; Plaintiff, BARBARA METZ, acted in actual and justifiable reliance on Defendants' representations and was injured as a result.

111.    Defendants committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiff, BARBARA METZ, relating to the Reglan/metoclopramide at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to public interests or public policy.

112.    Defendants misrepresented to the FDA, Plaintiff and the health care industry the safety and effectiveness of Reglan/metoclopramide and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Reglan/metoclopramide.

113.    Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known, that Reglan/metoclopramide had defects, dangers, and characteristics that were other than

what they had represented to Plaintiff, BARBARA METZ, and the health care industry generally.   Specifically, Defendants misrepresented to and/or actively concealed from Plaintiff, BARBARA METZ, and the consuming public that:

a. Reglan/metoclopramide had statistically significant increases in neuromuscular side effects which could result in serious injury;

b. Patients on Reglan/metoclopramide should not take it more than twelve weeks;

c. Reglan/metoclopramide was not fully and adequately tested for the neuromuscular side effects.

114.    As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendants, Plaintiff Barbara Metz suffered significant and ongoing injuries and damages.  Further, because Defendants' conduct was willful, reckless, intentional and maliciously fraudulent, Plaintiffs are entitled to an award of exemplary damages.

## X. COUNT V -- NEGLIGENCE PER SE

115.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

116.    The product label and package insert for Reglan/metoclopramide is misbranded within the meaning of 21 U.S.C. § 352(a) and (f) because it was false and misleading and failed to give adequate warnings and directions for use by physicians who prescribe Reglan/metoclopramide.  Because the Defendants each had a statutory duty under 21 U.S.C. § 352(a) and (f) not to misbrand Reglan/metoclopramide and because each of them violated this duty, they were guilty of negligence per se.  In addition, and more particularly, because Defendants knew, or should have known, that physicians commonly

prescribed Reglan/metoclopramide for long-term use, beyond the 12 week intended use that was approved by the FDA, pursuant to 21 CFR 201.128, long-term use became an "intended use" which required Defendants, and each of them, to provide adequate labeling for such a drug which accords with such other uses to which the article was commonly prescribed. Defendants' failure to adequately warn about the magnitude of the risk associated with long-term use constitutes negligence per se. Defendants' negligence per se proximately caused injury to Plaintiff, Barbara Metz, as described more fully herein.

## XI. LOSS OF CONSORTIUM

117. All allegations above are re-alleged and incorporated by reference.

118. As a proximate result of smoking the defective cigarettes sold and placed on the market, each Defendant caused additional and separate damages to DONALD METZ as the spouse of the BARBARA METZ for loss of the comfort, companionship, society, support, and services of the respective spouse.

## XII. PUNITIVE DAMAGES AGAINST ALL DEFENDANTS

119. Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

120. Plaintiffs would further show that the negligent acts and/or omissions of Defendants, as set forth above, constitute an entire want of care so as to indicate that the acts and/or omissions in question were the result of conscious indifference and/or malice so as to give rise to the award of exemplary damages.

121.    Plaintiffs would further show that the negligent acts and/or omissions of

Defendants, as set forth above, constitute an act or omission,

      a.    which, when viewed objectively from the standpoint of
Defendants, involved an extreme degree of risk, considering the
probability and magnitude of the potential harm to Plaintiffs, and

      b.    of which Defendants had actual, subjective awareness of the risks
involved, but nevertheless proceeded with conscious indifference
to the rights, safety or welfare of Plaintiffs.

The gross negligence of the Defendants was a proximate cause of the injuries and

damages suffered by Plaintiffs.

## XIII. DAMAGES

122.    As a direct and proximate result of the above-described acts and omissions of

Defendants, Plaintiffs have incurred actual damages in excess of $75,000.00, including

but not limited to the following:

  (a)    Reasonable and necessary medical expenses incurred in the past;

  (b)    Reasonable and necessary medical expenses reasonably likely to be incurred in
the future;

  (c)    Conscious physical pain and suffering experienced in the past;

  (d)    Conscious physical pain and suffering reasonably likely to be experienced in the
future;

  (e)    Mental anguish in the past;

  (f)    Mental anguish likely to be experienced in the future;

  (g)    Physical disfigurement in the past;

  (h)    Physical disfigurement likely to be experienced in the future;

  (i)    Physical impairment in the past;

  (j)    Physical impairment likely to be experienced in the future;

(k)     Pre and post-judgment interest at the lawful rate;

(l)     Exemplary damages; and

(m)    Such other applicable damages as the Court deems appropriate.

### XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, BARBARA METZ and DONALD METZ, pray that upon final determination of these causes of action Plaintiffs receive a judgment against Defendants, Wyeth, Schwarz and Actavis as follows:

(a)     Actual damages as alleged, jointly and/or severally against Defendants, in excess of the jurisdictional minimum;

(b)     Punitive damages alleged against Defendants, including Plaintiffs' attorney fees, in an amount to be determined;

(c)     Costs of court and reasonable attorney fees necessary for preparation of this case for trial;

(d)     Prejudgment interest at the highest rate allowed by law;

(e)     Interest on the judgment at the highest legal rate from the date of judgment until collected; and

(f)     All such other and further relief at law and in equity to which Plaintiffs may show themselves to be justly entitled.

### X. JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED this **24TH** day of November, 2010.

Brent R. Bigger, Esquire
Florida State Bar No. 823961
**ABRAHAMSON & UITERWYK**
900 West Platt Street
Tampa, FL 33606
Telephone (813) 222-0500
Facsimile (813) 221-4738
bbigger@uiterwyklaw.com


WILLIAM B. CURTIS
Texas State Bar No. 00783918
JAVIER GONZALEZ
Texas State Bar No. 24027331
**CURTIS LAW GROUP**
11551 Forest Central Drive,
Suite 300
Dallas, TX 75243
Telephone (214) 987-0005
Facsimile (214) 987-2545
BCurtis@Curtis-LawGroup.com

DANIEL J. MCGLYNN
Louisiana State Bar No. 17051
TERRANCE J. DONAHUE, JR.
Louisiana State Bar No. 32120
**MCGLYNN, GLISSON & MOUTON**
340 Florida Street
Baton Rouge, LA   70801
Telephone (225) 344-3555
Facsimile (225) 344-3666
Danny@mcglynnglisson.com

**ATTORNEYS FOR PLAINTIFFS**