UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| BARBARA METZ AND DONALD METZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| WYETH LLC; | § | CASE NO. 8:10-CV-2658-T-27AEP |
| SCHWARZ PHARMA, INC.; | § | |
| ACTAVIS ELIZABETH LLC, | § | |
| INDIVIDUALLY AND  D/B/A PUREPAC | § | |
| PHARMACEUTICALS | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, BARBARA METZ and DONALD METZ, by and through their undersigned counsel and for their causes of action against Defendants, Wyeth LLC, Schwarz Pharma, Inc., Actavis Elizabeth LLC, Individually and D/B/A Purepac Pharmaceuticals, and allege the following:

**I. PARTIES**

1.    Plaintiffs, BARBARA METZ and DONALD METZ, are individual residents and citizens of Douglas County, Colorado.

2.    Defendant, Wyeth LLC (hereinafter referred to as "Wyeth") is a Delaware corporation with its principal place of business at Five Giralda Farms, Madison, NJ

1

07940.  Wyeth, LLC is a wholly owned subsidiary of Pfizer, LLC. Pfizer, LLC is wholly owned by Pfizer, Inc. References to Wyeth include Wyeth individually, Wyeth Inc., Wyeth Pharmaceuticals, Inc. and collectively all divisions and/or subsidiaries, as well as successor-in-interest to A.H. Robins, Inc., American Home Drugs Corporation and ESI, Lederle, Inc.  Defendant, Wyeth has already answered and appeared herein.

3.     Defendant, Schwarz Pharma, Inc., ("Schwarz") is a  Delaware corporation, with its principal place of business in Mequon, Wisconsin.   References to Schwarz include Schwarz individually and collectively all of its predecessors in interest and divisions. Defendant Schwarz has already answered and appeared herein.

4.     Defendant, Actavis-Elizabeth LLC, (hereinafter referred to as "Actavis") is a Delaware corporation with its principal place of business in New Jersey.  Actavis is a wholly owned subsidiary of Actavis, Inc. and is the successor to Purepac Pharmaceutical, Inc., which is no longer in existence.  Actavis, Inc. is being sued herein as the owner of Actavis. Hereafter, Actavis, Actavis, Inc. and Purepac Pharmaceutical, Inc. will be collectively referred to as "Actavis." Defendant Actavis has already answered and appeared herein.

5.     Defendants, Wyeth and Schwarz will occasionally be referred to as "Brand Defendants", and Actavis, identified supra, may be referred to as "Generic Defendant". If reference is made to all defendants collectively, they may be referred to as "Drug Company Defendants."

6.     At all times material hereto, the Brand Defendants were engaged in the business

of testing,  developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide and/or metoclopramide HCl tablets in the State of Florida and in interstate commerce. At all times material hereto, the Generic Defendant was engaged in the business of testing, developing, marketing, distributing, promoting and selling Reglan/metoclopramide, and included with the drug the label that had been written by the Brand Defendants, for sale in the State of Florida and in interstate commerce.  All Drug Company Defendants are subject to the jurisdiction and venue of this Court.

## II. VENUE AND JURISDICTION

7.     Both jurisdiction and venue are proper in the Middle District of Florida.  The Defendants conduct or have conducted business activity in Hernando County, Florida and the Defendants have distributed products throughout Hernando County, Florida. Mrs. Metz was prescribed, purchased and consumed the Defendants' products in Hernando County, Florida.

8.     Jurisdiction is based on complete diversity between the Plaintiffs and all of the Defendants pursuant to 28 U.S.C. § 1332.

9.     Venue is proper as to causes of action against all Defendants because:

    a. A substantial part of the cause of action accrued in the State of Florida in that Mrs. Metz received and consumed the Defendants' pharmaceutical products in Hernando County, Florida and sustained injury in Hernando County, Florida.

    b. All of the Defendants have directed their products into Hernando County, Florida.

c.  All of the Defendants have sold their products in Hernando County, Florida.

d.  Hernando County sits in the Middle District of Florida.

10.  The amount in controversy exceeds $75,000.00.

## III. FACTUAL BACKGROUND REGARDING REGLAN/METOCLOPRAMIDE

11.  This case involves the long term ingestion of Reglan/metoclopramide by the Plaintiff as prescribed by her physician(s).

12.  Reglan/metoclopramide is a prescription medication classified as a GI stimulant, antiemetic and Dopaminergic blocking agent. It is indicated for short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

13.  Reglan/metoclopramide is indicated for treatment use of no greater than twelve (12) weeks; however, Drug Company Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and or esophageal reflux for durations that exceeded twelve (12) weeks – the label written by the Brand Defendants and published by both Brand and Generic Defendants made these representations, along with other forms of marketing and promotional materials and representations by all Drug Company Defendants.

14.  Patients who use Reglan/metoclopramide for long periods (exceeding twelve (12) weeks) are at a significant and unreasonably dangerous increased risk of developing a severe and permanent neurological movement disorder, known as tardive dyskinesia and/or akathisia.

15.     Other serious side effects that may be caused by ingesting Reglan/metoclopramide for longer periods of time include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

16.     Patients who use Reglan/metoclopramide for long periods (greater than 12 weeks) who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

17.     Tardive Dyskinesia and Akathisia are serious side effects associated with the ingestion of Reglan/metoclopramide and are debilitating neurological disorders  that often result in involuntary and uncontrollable movements of the head, neck, face, arms, legs and/or trunk, as well as, involuntary facial grimacing and tongue movements, including tongue thrusting, tongue chewing and/or other involuntary movements.

18.     Presently, there is no known cure for Tardive Dyskinesia or Akathisia.

### IV. ALLEGATIONS COMMON TO ALL COUNTS

19.     Plaintiffs bring this action for the purpose of recovering damages for the personal injuries Mrs. Metz has suffered as a result of being prescribed and ingesting Reglan, metoclopramide and/or metoclopramide HCl (hereinafter referred to as "Reglan/metoclopramide").

20.     In or around October 2006, Mrs. Metz' physician prescribed Reglan/Metoclopramide at a dosage of 10mg to treat abdominal pain/digestive problems.

Mrs. Metz continued to take Reglan/metoclopramide through and until approximately August 2007.

21.     The active ingredient, metoclopramide and metoclopramide HCl, is a dopamine antagonist.

22.     Upon information and belief, in prescribing the Reglan/metoclopramide to Mrs. Metz on a long-term basis, her prescribing doctor relied upon information from a number of different sources, including labels published in the package inserts and/or the Physicians' Desk Reference (hereinafter referred to as "PDR") or otherwise disseminated by the Drug Company Defendants.  Brand Defendants wrote the original label, and that label was used in distributing the product with both brand name Reglan, and the same false label was used with generic metoclopramide.  Additionally, Plaintiff's prescribing physicians relied upon the Drug Company Defendants to alert them if it became known that information appearing in the labeling for Reglan/metoclopramide was false, or if additional information bearing on risks or benefits of the drug was discovered.  Plaintiff and her prescribing physicians also relied upon the Drug Company Defendants to alert them to any significant safety related labeling changes that would affect the benefit/risk balance performed when deciding whether to prescribe or ingest Reglan/Metoclopramide. The Drug Company Defendants made affirmative representations that Reglan/metoclopramide had a low risk of side effects and was safe for long-term treatment of chronic conditions.   None of the Drug Company Defendants made any effort to correct the false and misleading information that was believed and relied upon by the prescribing physicians.  Likewise, no Drug Company Defendant undertook any

6

effort to inform physicians or consumers of the necessity of using Reglan/metoclopramide for periods no longer than 12 weeks, important information that was added to the labeling for Reglan/metoclopramide in 2004, prior to Plaintiff's ingestion of the drug.

23.     Mrs. Metz ingested the Reglan/metoclopramide as prescribed.

24.     Mrs. Metz used the pharmaceutical drugs Reglan/metoclopramide without substantial change in the condition of the drugs between the time of design and manufacture of the drugs and the time she used the drugs as directed.

25.     Mrs. Metz' long-term ingestion of the Reglan/metoclopramide caused her injuries.

26.     Neither Mrs. Metz nor her physicians were aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the pre-2004 label for Reglan/metoclopramide (which did not prohibit long-term use), and neither Mrs. Metz nor her prescribing physicians were advised by either the Brand Defendants or the Generic Defendant that the label was false, misleading and inaccurate, or that use of Reglan/metoclopramide should not exceed 12 weeks in duration.  The information in the label suggested that the risk of injury was remote, and that the product could be used long term; both of these representations were false and misleading, which was known to the Brand Defendants, and should have been known by the Generic Defendant.  Despite this knowledge (and in the face of ignorance to this knowledge), and with the knowledge that

7

Reglan/metoclopramide was commonly being prescribed to individuals for longer than 12 weeks, Drug Company Defendants made no effort to inform physicians or consumers of the dangers associated with long-term use of Reglan/metoclopramide.  Drand Defendants failed to change the Reglan labeling to delete false and misleading information, or strengthen the prohibition on long-term use and Generic Defendant chose to sell their product with a false, misleading and inaccurate label knowing such actions were likely to result in severe injury to numerous individuals.

27.     In or around September 2007, Mrs. Metz was exhibiting abnormal movements which have since been linked to her use of Reglan/metoclopramide.

28.     Mrs. Metz' use of Reglan/metoclopramide, as prescribed, resulted in overexposure to the drugs which have caused her to suffer serious, permanent and disabling injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems, specifically Tardive Dyskinesia, a severe and often permanent disfiguring neurological movement disorder.

29.     Mrs. Metz' serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Brand Defendants' label, which was used by all Drug Company Defendants in the dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential effects of exposure to and long-term ingestion of Reglan/metoclopramide to the medical community, Mrs. Metz, and other foreseeable users of the drug.  The Brand Defendants created and/or failed to correct the false and misleading content of the label, and all Drug Company Defendants chose to market, sell and distribute a drug with an inaccurate,

8

misleading, false and inadequate label.  Drug Company Defendants also failed to alert consumers and the medical community to the dangers associated with long-term of the drug use repeatedly identified in published literature since the early 1980s and for which the prohibition against use of Reglan metoclopramide beyond 12 weeks was added to the label for Reglan/metoclopramide in 2004.

30.     Mrs. Metz has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain, suffering, psychological injury and other injuries and damages doe to the prescription and ingestion of this drug.

31.     Recognizing the inadequate nature of the Defendants' label and warnings, in February 2009 the United States Food and Drug Administration (hereinafter referred to as "FDA") issued an advisory requiring the addition of a **Boxed Warning** for Reglan/metoclopramide.  This new warning, appearing at the top of the label, spells out that "Chronic treatment with metoclopramide can cause tardive dyskinesia, a serious movement disorder that is often irreversible . . . ."  Additionally, the new Boxed Warning now tells physicians and patients that "Prolonged treatment (greater than 12 weeks) with metoclopramide should be avoided in all but rare cases . . . ."  Finally, the FDA is now requiring that manufacturers/Defendants implement a Risk Evaluation and Mitigation Strategy because the FDA has determined that the use of Reglan/metoclopramide "pose[s] a serious and significant public health concern requiring the distribution of a Medication Guide."  This Medication Guide, setting out all the risks of the drug and to be given to all users "is necessary for the patients' safe use of Reglan (metoclopramide) . . .

9

." Unfortunately, neither this Boxed Warning nor the Medication Guide was available to Mrs. Metz. Fortunately, this new Boxed Warning and the corresponding Medication Guide are now required of ALL manufacturers of Reglan/metoclopramide – whether brand name Reglan or makers of the generic metoclopramide. For any drug company that chooses to sell the product, their label must include the Boxed Warning, and they must make a Medication Guide available to every consumer of their products. The addition of the Black Box Warning placed much greater emphasis on the prohibition against long-term use of Reglan/metoclopramide that had appeared in the label for Reglan/metoclopramide since 2004, and was needed due to the fact that this information had never previously been communicated to either consumers or the medical community.

## V. DEFENDANTS' WRONGFUL CONDUCT

32.     This case involves Drug Company Defendants' failure to warn doctors and patients of information within their knowledge or possession which indicated that the subject Reglan/metoclopramide should not be taken for long periods of time, caused serious, permanent and debilitating side effects, including tardive dyskinesia. This case also involves Drug Company Defendant's decision to market an unreasonably dangerous drug that had a defective label that misrepresented the dangers of the product, while concealing important information bearing on the risks associated with the drug Furthermore, this case involves Brand Defendants' misrepresentations and fraud by authoring and/or maintaining a label that it knew contained false and misleading information, and which all manufacturers were required to copy if they chose to sell the drug.

33.      Brand Defendants jointly and severally marketed, manufactured and distributed Reglan/metoclopramide and encouraged the long term use of these drugs, misrepresented the effectiveness of these drugs and concealed the drug's dangerous side effects through their package insert, promotional materials and other marketing efforts.   Generic Defendant chose to market and sell the drug with knowledge that its label was false and misleading, and encouraged long-term use of Reglan/metoclopramide by concealing the fact long-term use of the drug was prohibited. Brand Defendants had a duty to correct the content of the label, and all of the Drug Company Defendants had affirmative duties to alert consumers and the medical community that use of metoclopramide was neither safe nor effective in long-term use.   Despite the fact that this information was added to the label for metoclopramide prior to the time that Plaintiff began ingesting Reglan/metoclopramide, none of the Drug Company Defendants made any effort to ensure this information was communicated to those who needed it.

34.      Reglan/metoclopramide is indicated as short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

35.      Reglan/metoclopramide is indicated for use for no greater than twelve weeks; however, the label written by Brand Defendants and disseminated by all Drug Company Defendants represented that Reglan/metoclopramide was safe for use to treat nausea, gastroesophageal reflux, and/or diabetic gastroparesis for durations that exceed twelve weeks.

36.      Patients who use Reglan/metoclopramide for long periods are at a significantly increased risk of developing a severe and permanent neurological movement disorder.

37.     Other serious side effects caused by ingesting Reglan/metoclopramide for long periods include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

38.     Patients who use Reglan/metoclopramide for long periods who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

39.     Tardive dyskinesia, one of the serious side effects associated with the ingestion of Reglan/metoclopramide is a debilitating neurological disorder that often results in involuntary and uncontrollable movements of the head, neck, face, arms, legs and trunk, in addition to facial grimacing, uncontrollable tongue movements and other involuntary movements.  Presently, there is no cure for tardive dyskinesia.

40.     Plaintiff, BARBARA METZ, diagnosed with tardive dyskinesia, caused by the ingestion of metoclopramide, is permanent.

41.     Wyeth is the successor in interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereinafter referred to as "FDA") to distribute metoclopramide, under the brand name "Reglan" under the FDA's New Drug Application (NDA)[1] schema in 1983.

42.     Defendant, Wyeth's predecessor-in-interest, A.H. Robins Company, Inc. expressly warranted to some physicians that Reglan/metoclopramide is safe for long-term

---

[1]   Upon information and belief, Wyeth is the holder of multiple NDAs for Reglan, metoclopramide and metoclopramide HCl.

use. These representations were made in many different ways, through the label, through the PDR, through marketing and detail people, through journal advertisements, through published medical literature that was ghostwritten by A.H.Robins, through opinion leaders and speakers paid by Robins and Wyeth, among others. Schwarz and later the generic manufacturers such as Actavis took advantage of these misrepresentations by continuing to sell and market the product for long-term use without correcting the label or the representations, and for Actavis without even examining the accuracy or truthfulness of the representations.

43.     A.H. Robins knew that its warranties regarding safety for long-term use would be relied upon by ordinary, reasonable and prudent physicians who would share that information with other physicians in their communities and that eventually physicians would come to rely on A.H. Robins' express warranties about Reglan/metoclopramide's safety for long-term use. Further, all of the Brand Defendants knew that their label would be used and relied upon by the physicians, by the consuming patients and also by the generic manufacturers who merely copied and reproduced the misrepresentations.

44.     A.H. Robins' express warranties about the safety of Reglan/metoclopramide for long-term use were false and intentionally and negligently misleading.

45.     As successor-in-interest to A.H. Robins Company, Inc., Wyeth is legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made by A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/metoclopramide, and all liabilities stemming there from.

46.     Wyeth manufactured, marketed and distributed Reglan, metoclopramide, and/or metoclopramide HCl through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania and through its ownership of "ESI."[2]

47.     Wyeth knew that it must fully disclose material safety data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling, including warnings about risks and side effects, and test results involving animal studies, clinical studies, and the drug's bioavailability.  This information was relied upon by physicians, patients and by generic manufacturers who copied and reproduced the label.

48.     Wyeth knew that the false data and information would be relied upon by the medical community, physicians, consumers such as Plaintiff, generic manufacturers and other foreseeable users of Reglan/metoclopramide once the NDA was approved and Wyeth was listed as the Reference Listed Drug Company for the drug.

49.     Wyeth intentionally and negligently disseminated misleading information to physicians across the county about the risks of long-term ingestion of Reglan/metoclopramide and the risk of extrapyramidal side effects, including tardive dyskinesia.  Wyeth disseminated this information through a number of different sources, as described above, knowing that physicians, patients and generic manufacturers would rely upon the information.

50.     Defendant, Schwarz purchased from Wyeth the rights and *liabilities* associated

---

[2]   Upon information and belief, ESI was a former subsidiary which merged into Wyeth on or about December 15, 1998.

with Reglan/metoclopramide, the terms of which, upon information and belief, obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan/metoclopramide.  For a period of years after the December 2001 sale to Schwarz, Wyeth agreed to be jointly responsible for the safety and reporting requirements of the brand name Reglan; additionally, Wyeth continued to manufacture the actual pills, the labels and the packaging for Schwarz for a period of time after the sale.

52.     Defendant, Schwarz entered into an indemnification agreement with Wyeth over the purchase of the innovator, Wyeth's, Reglan, which included disclosure of clinical studies on Reglan/metoclopramide that were not publicly available.[3]

53.     Because Defendant, Schwarz acquired Defendant, Wyeth's Reglan/metoclopramide assets and liabilities while Wyeth was involved in on-going litigation regarding Reglan/metoclopramide, and nevertheless agreed to indemnify Wyeth against all claims related to the ingestion of the drug, Schwarz knew or should have known that the NDA label for Reglan/metoclopramide (Wyeth's label) misrepresented the safety of the drug, withheld warnings of the known side effects of the drug, and knew or should have known of the safety issues surrounding it.   Additionally, Schwarz undertook an immediate evaluation of the label to determine its accuracy.  The results of that evaluation confirmed (on three separate occasions between 2002 and 2004) that the label was inaccurate, false and misleading, and that physicians were not receiving the message regarding the dangers of the drug.  Schwarz took 3 years to modify the label to

---

[3]   Plaintiffs do not have information regarding the maximum amount of liability under the defendants' indemnification agreement.

strengthen the warning about the duration of use – adding bolded language in two places stating that therapy with the drug "should not exceed 12 weeks in duration. Prior to these changes, the Reglan/metoclopramide had only stated that use of Reglan/metoclopramide beyond 12 weeks "has not been evaluated and cannot be recommended." Schwarz never informed anyone of the change – and instead chose not to publish the change in the PDR, not to to alert physicians or consumers to the changeor to use any other available means to deliver the strengthened warning in 2004. Actavis, as a generic manufacturer, also made no effort to communicate or disseminate the new label or the added warning, despite the fact that they could have published the information in the PDR or medical journals, issued a "Dear Doctor Letter" to inform physicians of the change, or used numerous other means available to generic manufacturers to communicate the prohibition on long-term use added to the label in 2004. No Drug Company Defendant ever provided the updated 2004 warning to any consumer or physician, or made any effort to communicate the prohibition on long-term use. As the label for Reglan/metoclopramide was last published in 2002, without the prohibition on long-term use, these actions and inactions of the Drug Company Defendants effectively ensured that dangerous long-term use would continue unabated.

54.     Under the FDA schema, Wyeth was and is the Reference Listed Drug Company (RLD), under a specific NDA, for Reglan/metoclopramide.

55.     Under the FDA schema, Defendant, Schwarz was and remains the RLD and/or NDA Holder for Reglan/metoclopramide.

56.     At all times material hereto, Defendants, Wyeth and Schwarz as the NDA

Holder and/or RLD companies, were aware of the serious side effects caused by Reglan/metoclopramide including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism, and that their label vastly understated the frequency at which these side effects occurred. Defendant Actavis made the conscious decision to remain ignorant of the dangers posed by its drug product and the false information contained in its label. Even when confronted with competent expert testimony and numerous epidemiological and other studies which showed information appearing in its label for metoclopramide was false, misleading, and likely to injure consumers, Actavis proudly declared that it is not an experts in the drug it sells, has no understanding of the dangers it poses, and that it makes no effort to gain the knowledge or understanding of its label and  warnings, monitor the effect its drug has in the population, or do anything else to ensure the safety of its product. Instead, Defendant Actavis blindly sells the product for uses which have been shown to be neither safe nor effective.

57.      Defendants, Wyeth and Schwarz have a duty to ensure their warnings to the medical community are accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug. Defendant Actavis has the same duty to conduct safety surveillance and to ensure the warnings for their drug are appropriate – although they cannot change the CONTENT of the label, they are absolutely required to notify and publish any strengthened warnings (especially when the

brand name drug label is not published).  With the 2004 strengthened label, Actavis could have simply published the label in the PDR or mailed it to physicians to draw the needed attention to the stronger restriction on duration of use.

58.     Defendants, Wyeth and Schwarz represented that Reglan/metoclopramide was safe for use to treat gastritis/gastroesophageal reflux knowing that the drug was not safe for that purpose and was dangerous to the health and body of Plaintiff.  Defendant Actavis chose to profit from those misrepresentations without ever examining their accuracy or correcting the misrepresentations.

59.     Defendants, Wyeth and Schwarz represented that Reglan/metoclopramide caused minimal side effects knowing that the drug caused central nervous system side effects, and extrapyramidal symptoms, among other side effects, far more frequently than represented.  Defendant Actavis also made these representations through their dissemination of the package insert, and chose to profit from those misrepresentations without ever examining their accuracy or correcting the misrepresentations.

60.     Drug Company Defendants,   had actual or constructive knowledge, through their own studies and/or studies by independent investigators, that doctors frequently prescribed Reglan/ metoclopramide for long-term use that was not safe for patients.

61.     Drug Company Defendants had actual or constructive knowledge, through their own studies and/or studies by independent investigators, that nearly one-third of all patients who used Reglan/metoclopramide received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

62.     Drug Company Defendants, also had actual or constructive knowledge, through research by independent investigators, that the risk of tardive dyskinesia and other extrapyramidal side effects of Reglan/metoclopramide in patients who receive the drug for 12 weeks or longer is approximately 100 times greater than disclosed in package inserts and the PDR.

63.     Drug Company Defendants,  knew or through the exercise of reasonable care should have known, that many patients who use Reglan/metoclopramide are not able to effectively metabolize it and that as a foreseeable consequence of their inability to effectively metabolize, those patients have a greater risk of developing serious and permanent injuries.

64.     Drug Company Defendants, had actual or constructive knowledge of facts which demonstrated that representations in the Reglan/metoclopramide package insert, the PDR and literature they distributed to physicians were false and misleading.

65.     Defendants, Wyeth and Schwarz failed to correct their monograph to eliminate false and/or misleading information and all Drug Company Defendants failed to disclose that knowledge to the medical community, Plaintiff, BARBARA METZ, and other foreseeable users. Furthermore, Actavis chose to profit from those misrepresentations without ever examining their accuracy or correcting the misrepresentations.  All Drug Company Defendants could have disseminated the 2004 label change and the information it contained through available sources such as the PDR or mailing labels to physicians; generic manufacturers may publish their package inserts in the PDR, and doing so does not require prior FDA approval.  Likewise, a generic manufacturer's communication of

information already appearing in the FDA-approved label , does not invoke FDA restrictions on generic manufacturers, as generic manufacturers are prohibited only from disseminating information that is not "consistent with" the drug's approved labeling. In addition, the FDA also encourages ALL drug manufacturers – brand and generic – to use other sources to communicated important safety-related information in order to educate physicians and consumers, such as journal ads, continuing education, detail representatives, patient education guides and the like. These means have always been available to all manufacturers of generic drugs, and FDA statements and guidances have counseled manufacturers to make use of such education materials for over a decade.

66.     It is the public policy of the United States and of this state, as reflected in the Hatch-Waxman Act, to encourage the availability of less expensive, generic drug products that are safe and effective and therapeutically equivalent to name brand products and to encourage the substitution, as appropriate, of such generic products for name brand products in patients' medical therapy.  Another equally important goal of the Hatch-Waxman Act is to encourage innovation in pharmaceutical products by securing exclusivity rights to those manufacturers that invest in developing new and better pharmaceutical products.  The actions of Drug Company Defendants described herein have frustrated these policies by keeping prescription drugs on the market which are neither safe nor effective in their forseeable uses, despite the existence of newer alternative therapies which are both safer and more effective.

67.     Defendants, Wyeth and Schwarz as prescription drug manufacturers and/or

distributors, knew or should have realized that so-called "drug product selection laws," enacted in every state, including this state, authorize or require a prescription for a drug identified by product brand name or by generic name to be filled, subject to certain limitations, with a generic drug product that is therapeutically equivalent to the name brand drug product.

68.      Defendants, Wyeth and Schwarz knew or ought to have realized that generic drug manufacturers are required by federal law to copy verbatim the package insert for the name brand prescription drug product.  In addition, Wyeth and Schwarz knew or ought to have realized that prior to the Food and Drug Administration Amendment Act of 2007 ("FDAAA"), they, as the NDA holders for Reglan/metoclopramide, were the only parties allowed to make changes to the content of the package insert for the drug.  Neither generic manufacturers nor the FDA had authority to make such changes.

69.      Defendants, Wyeth and Schwarz knew or ought to have known that the generic drug manufacturers also typically rely upon both the current and previous  marketing efforts of the name brand manufacturer to generate sales of their own products.

70.      Defendants, Wyeth and Schwarz knew or ought to have realized that physicians commonly consult the information disseminated by the name brand manufacturer, in the PDR or otherwise, and rely upon that information in their decisions concerning the prescribing of those products for their patients.

71.      Defendants, Wyeth and Schwarz knew of should have known, specifically, that physicians would rely upon the information disseminated by them, regardless of whether

the prescriptions might eventually be filled with the name brand product, Reglan, or a generic equivalent, and that many patients, in accordance with those prescriptions, would be likely to ingest generic Reglan/metoclopramide.

72.     Defendant, Actavis, submitted an Abbreviated New Drug Application (ANDA) to the FDA, based on representations and submissions made by the RLD companies, seeking approval to manufacture, market, and distribute generic Reglan/metoclopramide.

73.     Under the ANDA process, the Code of Federal Regulations requires Actavis to submit labels for Reglan/metoclopramide identical in all material aspects to the reference listed drug label each time it updates its application.

74.     Under the Code of Federal Regulations, Actavis had a duty to ensure its Reglan/metoclopramide warnings to the medical community wereand adequate, to ensure the information appearing in its label for metoclopramide was not false or misleading, to conduct post market safety surveillance, to review all adverse drug event information, and to report any information bearing on the safety of Reglan/metoclopramide use. These duties are in addition to, and independent of, Actavis' duty to copy the language appearing in the label for the Reference Listed Drug ("RLD").  In other words, the FDCA and implementing regulations imposed requirements on Actavis beyond merely copying the label. In fact, generic manufacturers have the same safety obligations to ensure their drugs are safe and effective, to carry proper warnings, and to perform post-market safety surveillance as the Reference Listed Drug holder.  Only the RLD, however, may change the content appearing in a prescription drug's label.  A generic manufacturer may not unilaterally institute such a change, and prior to the enactment of the FDAAA, neither did

the FDA.

75.     Under the Code of Federal Regulations, if Actavis discovers information in the course of the fulfillment of it's duties as outlined above that bears on the safety or effectiveness of its drug product, it must report that information to the medical community, Plaintiff and other foreseeable users of Reglan/metoclopramide to ensure that their warnings are continually accurate and adequate.  Alternatively, should Actavis learn that the labeling for its drug product contains false or misleading information, or lacks adequate instructions for use, the FDCA and implementing regulations require it to stop selling and distributing its product.

76.     Defendant, Actavis, failed to investigate the accuracy of its metoclopramide and/or metoclopramide HCl drug labels.

77.     Defendant, Actavis, failed to review the medical literature for the metoclopramide drug and/or metoclopramide HCl drug.

78.     Defendant, Actavis, relied upon the name brand manufacturer and the referenced listed drug companies to review the aforementioned medical literature for Reglan/metoclopramide, even though FDA regulations and the FDCA require Actavis to independently examine the safety data available to them, and to review the labels for their drug products to ensure the accuracy of the statements appearing therein, and the adequacy of the instructions for safe use.

79.     Under the FDA laws and regulations, the content appearing in the label for the RLD is used for the generic product; all manufacturers, whether generic or brand, have

the same duties and responsibilities regarding monitoring the safety of their drugs and the obligation to not distribute drugs that are misbranded.

80.    Defendant, Actavis, failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing Reglan/metoclopramide, and the fact that the drug should not be used for longer than 12 weeks.    Although Actavis could not change the content of the Reglan/metoclopramide label, when that label was changed in 2004 to add a prohibition on long term use, Actavis did not make use of numerous available means to communicate this information to consumers or physicians.

81.    All Defendants to this action who have manufactured, marketed and distributed generic Reglan/metoclopramide have failed in the same manner as Defendant, Actavis.

82.    Brand Defendants disseminated to physicians, through package inserts, the publication of the PDR, and otherwise, information concerning the properties and effects of Reglan/metoclopramide, with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.    Generic Defendant failed to provide any information regarding their drug products to physicians or consumers, instead providing a single package insert only to pharmacies attached to the bulk packaging of their drug products.    Generic Defendant's actions virtually ensured that profitable sales of metoclopramide for long-term use would continue unabated, despite the addition of a warning prohibiting such use in 2004.

83.    Drug Company Defendants knew, or should have known through the exercise of

24

reasonable care, that the package insert for Reglan/metoclopramide substantially understated the frequency of acute and long-term side effects caused by ingesting the drug.

84.     Brand Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.  Actavis, through its participation in the litigation became aware that the basis upon which the drug gained original FDA approval was unscientific and false.  Despite this fact, Actavis continued to sell Reglan/metoclopramide, and did not inform the FDA of this fact.  In 2004 the label for Reglan/metoclopramide was changed to include a prohibition on use of the drug for longer than 12 weeks (although not as prominent or likely to attract attention as the later 2009 Black Box); none of the Drug Company Defendants distributed that warning to any physician who would be prescribing the drug, or otherwise informed them of the dangers associated with long-term use of the drug.

85.     Drug Company Defendants owed a duty in all of their several undertakings, including the sale of its drug products, the dissemination of information concerning Reglan/metoclopramide, and the design of its packaging, to exercise reasonable care to ensure that they did not create unreasonable risks of personal injury to others.

86.     Reglan/metoclopramide was widely advertised by Robins and Wyeth as a safe and effective treatment of diabetic gastroparesis, gastroesophageal reflux disease (GERD) and other gastrointestinal disorders.

87.     Drug Company Defendants failed to conduct and report post market safety surveillance on Reglan/metoclopramide.  Defendants failed to review all adverse drug event information[4] and to report any information bearing upon the adequacy and accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/metoclopramide.  As with all safety obligations, these duties are owed by both brand and generic manufacturers.

88.     Defendants failed to monitor all relevant scientific literature related to Reglan/metoclopramide. As with all safety obligations, these duties are owed by both brand and generic manufacturers

89.     Drug Company Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/metoclopramide for long periods of time. As with all safety obligations, these duties are owed by both brand and generic manufacturers

90.     Drug Company Defendants failed to report data, *regardless of the degree of significance,* regarding the adequacy of its warnings and/or the accuracy of statements regarding the efficacy or safety of Reglan/ metoclopramide appearing in the labels for their drugs. As with all safety obligations, these duties are owed by both brand and generic manufacturers

91.     Drug Company Defendants knowingly concealed from physicians material facts

---

[4]      Defendants are required to review all adverse drug experience information obtained or otherwise received . . . from any source . . . including derived from postmarketing clinical investigations, postmarketing epidemiological/surveillance studies, reports from the scientific literature, and unpublished scientific reports.  21 C.F.R. § 317.80(b);

bearing on the safety of long-term use of metoclopramide. This information includes, but is not limited to, reports of adverse events, the existence of studies and scholarly articles identifying the inadequacy of the warnings against long-term use, the falsity of information regarding the risks posed by use of metoclopramide, and information showing that long term use of the drug was a common practice. Defendants also concealed the fact that the label for Reglan/metoclopramide had been changed in 2004 to include two bold-type warnings stating that therapy with the drug "should not exceed 12 weeks in duration."

92.     Brand Defendants concealed the fact that earlier false information disseminated by A.H. Robins Company and/or Wyeth representing long-term Reglan/metoclopramide therapy to be reasonably safe, was unscientific and false. Generic Defendant failed to apprise itself of the information upon which Reglan/metoclopramide was granted approval, despite the fact that the FDCA and implementing regulations require this information to be made public prior to the approval of any generic equivalent.[5]

93.     Drug Company Defendants were either actually or constructively aware, and concealed the fact that Reglan/metoclopramide is a neuroleptic agent and dopamine antagonist, which can be expected to lead to tardive dystonia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation. Drug Company Defendants concealed this highly important information by consciously or negligently failing to fulfill their federal post-marketing safety

---

[5] 21 C.F.R. 314.430

requirement to perform surveillance and report adverse events bearing on the safety or efficacy of their drug products, to evaluate their warnings for adequacy, to ensure that their label did not contain false or misleading statements, and by making no effort to communicate the prohibition on long-term use added to the metoclopramide label in 2004.

94.     Drug Company Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroparesis and/or other gastric disorders with Reglan/metoclopramide for longer than twelve weeks is unlikely to be reasonably safe.  Drug Company Defendants concealed this highly important information by consciously or negligently failing to fulfill their federal post-marketing safety requirement to perform surveillance and report adverse events bearing on the safety or efficacy of their drug products, to evaluate their warnings for adequacy, to ensure that their label did not contain false or misleading statements, and by making no effort to communicate the prohibition on long-term use added to the metoclopramide label in 2004.

95.     Some or all of the other Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/metoclopramide products, received clear notice of Wyeth's active suppression of important safety information concerning Reglan/metoclopramide, yet despite this notice chose to ignore the information and join consciously in the suppression.

## VI. COUNT I -- NEGLIGENCE

96.      Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

97.      Brand Defendants owed a duty to the general public and specifically to Plaintiffs to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Reglan/ metoclopramide at issue in this lawsuit. Generic Defendant owed a duty to the general public and to Plaintiffs to exercise reasonable care in the testing, design, study, development, packaging, manufacture, promotion, sale, marketing and distribution of their prescription medications; Generic Defendant could not rewrite the content of the label, but owed all of the same safety obligations to not distribute a drug that was misbranded, regardless of who authored the content of the label.  Federal law requires Generic Defendant to cease sales of its metoclopramide products and to promptly inform the FDA should it discover that its label contains any information that is false or misleading, or if the label lacks adequate instructions for safe use.  All Drug Company Defendants failed to exercise reasonable care in the design of Reglan/metoclopramide because as designed, it was capable of causing serious personal injuries such as those suffered by Plaintiff, BARBARA METZ, during foreseeable use.   This design included the distribution of Reglan/metoclopramide in bulk containers with a single package insert containing important information that was highly unlikely to reach physicians or consumers.  At all times relevant to this case, there existed safer packaging designs that any drug manufacturer could have utilized in order to minimize the risks posed by long-term use of Reglan/metoclopramide.  These include the implementation of unit-of-use

packaging, the inclusion of auxiliary stickers in the bulk packaging to ensure the transmission of important safety information, and other available means. Unlike labeling, a generic product's packaging is not required to be the "same as" or "consistent with" that of the RLD, and a manufacturer may change the packaging for its drug at any time. All Drug Company Defendants also failed to exercise reasonable care in the marketing of Reglan/metoclopramide because they introduced into the stream of commerce a drug product whose label contained false and misleading information, and which lacked adequate instructions for safe use. Drug Company Defendants also failed to warn that long-term use of Reglan/metoclopramide was neither safe nor effective, and that therapy with the drug should not exceed 12 weeks in duration. Brand Defendants should have written a better label, corrected the false and misleading information regarding the risks of the drug appearing therein, and/or added/strengthened warnings against long-term use. Generic Defendant should have refrained from selling a drug whose label contained false and misleading information, and which likewise lacked adequate instructions for safe use of the drug. If generic defendant desired to continue manufacturing and selling metoclopramide, it should have approached the FDA to inform them of the false/inaccurate information appearing in the label and of the fact that the label lacked adequate instructions for safe use. Furthermore, all Drug Company Defendants should have widely disseminated to physicians the fact that the label for Reglan/metoclopramide had been changed in 2004 to state that therapy with the drug should not exceed 12 weeks in duration.

98.      Defendants breached their duty and were negligent in their actions,

misrepresentations, and omissions toward Plaintiff, BARBARA METZ:

(a)     All Defendants failed to use due care in developing, testing, designing and manufacturing Reglan/metoclopramide so as to avoid the aforementioned risks to individuals when Reglan/metoclopramide was being used for treatment of patients;

(b)     Brand Defendants failed to write proper or adequate warnings regarding adverse side effects and health risks associated with the use of Reglan/metoclopramide, failed to correct or delete false and misleading statements appearing within the package insert regarding the frequency at which side effects occurred, comparative severity, rate of occurrence, and duration of such adverse effects; All Defendants failed to communicate warnings added to the label for Reglan/metoclopramide in 2004 stating that therapy with the drug should not exceed 12 weeks in duration.;

(c)     All Defendants negligently introduced their products into the stream of commerce accompanied by false statements of the frequency with which permanent irreversible neurological damage occurred with metoclopramide use;

(d)     All Defendants failed to provide warnings to the medical community indicating that long-term use of Reglan/metoclopramide was neither safe nor effective.

(e)     Brand Defendants failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Reglan/metoclopramide; Generic Defendant failed to apprise itself of publicly available information generated in pre-clinical testing and failed to conduct adequate post-marketing safety surveillance to identify risks associated with metoclopramide use.

(f)     All Defendants failed to provide adequate training or information to medical care providers for appropriate use of Reglan/metoclopramide;

(g)     All Defendants failed to adequately warn consumers and medical prescribers (but instead actively encouraged the sale of Reglan/metoclopramide), about the following:

(1)     that Reglan/metoclopramide should not be prescribed or used for more than twelve weeks;

(2)     that Reglan/metoclopramide can cause neuromuscular side effects, including, but not limited to, tardive dystonia, tardive akathisia,

and tardive dyskinesia;

(3)     that Reglan/metoclopramide should be discontinued in the face of involuntary facial, tongue, jaw, limb or trunk movements;

(4)     that the health risks posed by Reglan/metoclopramide may be increased in the elderly population; and

(5)     that commonly occurring side effects of Reglan/metoclopramide use may become debilitating, difficult, and painful, necessitating lengthy and/or repeated visits to the doctor, clinic, or hospital; Brand Defendants should have included this information in the labeling for Reglan/metoclopramide and concurrent communication, and all defendants should have communicated the prohibition on long term use added throughthe 2004 label change to physicians and/or consumers;

(h)     Drug Company Defendants failed to adequately test  their Reglan/metoclopramide products including, without limitation, identifying possible adverse side effects and health risks caused by the use of Reglan/metoclopramide, the frequency at which they occur, and populations which are more susceptible to these risks;

(i)     Failed to adequately warn users, consumers and physicians about the severity, scope and likelihood of neurological damage and related dangerous conditions to individuals taking Reglan/metoclopramide; Brand Defendants should have written a better warning label, or changed the package insert to correct/delete false and misleading information and to add/strengthen and All Defendants should have disseminated the 2004 label change;  and

(j)     All Defendants – both through active representations and omissions - represented to physicians, including but not limited to BARBARA METZ's prescribing physician, that Reglan/metoclopramide was safe and effective for use in treatment of chronic conditions.

99.     The Reglan/metoclopramide was in substantially the same condition when it was ingested by Plaintiff, BARBARA METZ, as it was in when it left the control of the Defendants.  Reglan/metoclopramide's capability to cause serious personal injuries and damages such as those suffered by Plaintiff, BARBARA METZ, was not due to any voluntary action or contributory negligence of Plaintiff.  The Reglan/metoclopramide was

consumed by Plaintiff BARBARA METZ as directed and without change in its form or substance.

100.     None of these duties run contrary to the FDA regulations and, to the contrary, are directly consistent with the Food, Drug and Cosmetic Act's duties and responsibilities for all drug manufacturers.  Defendants' failure to exercise reasonable care in the design and/or marketing of Reglan/metoclopramide was a proximate cause of Plaintiff, BARBARA METZ's injuries and damages.  Specifically, Plaintiff alleges that Drug Company Defendants were negligent in violating the following provisions of federal law:

a.      **21 U.S.C. §331(a).**  Drug Company Defendants violated this statutory provision by introducing or delivering for introduction into interstate commerce a misbranded drug product.  Defendants' Reglan/metoclopramide products were misbranded pursuant to 21 U.S.C. §352 for the reasons appearing in subsections (b)-(f) below.

b.      **21 U.S.C. §352(a).**  Drug Company Defendants' Reglan/metoclopramide products were misbranded in that the drug's labeling contained false or misleading information.  Namely, the labeling for Reglan/metoclopramide falsely stated that extrapyramidal side effects ("EPS") caused by the drug were "comparatively rare" to other drugs known to cause these side effects.  The labeling for Reglan/metoclopramide also falsely stated that EPS occurred in 1 in 500 or .2% of patients treated with the usual adult dosages.  Defendants' labels for Reglan/metoclopramide were also misleading in that they invited use of the drug for periods exceeding 12 weeks.

c.      **21 U.S.C. 352(f).**  Drug Company Defendants' Reglan/metoclopramide products were misbranded in that the drugs' labeling did not provide adequate directions for safe use and failed to contain adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users.

d.      **21 U.S.C. 352(i).**  Drug Company Defendants' Reglan/metoclopramide products were misbranded in that the drugs container was made, formed,

or filled so as to be misleading. Specifically, Defendants utilized bulk packaging of the drug product accompanied by a single package insert. It was forseeable that the warnings and information appearing in the FDA-approved label would not be relayed by the pharmacies that dispensed the Reglan/metoclopramide. Such packaging is common with drug products that do not pose significant risks with extended usage. Other, safer packaging alternatives designed to discourage long-term use (such as unit-of-use packaging) were readily available for defendants to package their products, and are appropriate for use in drugs that pose significant health risks when taken for long periods of time. Defendants' packaging misleadingly implied that there was no increased risk with long-term administration of the drug.

e.   **21 U.S.C. §352(j).**  Drug Company Defendants' Reglan/metoclopramide products were misbranded in that they were dangerous to health when used in the dosage or manner or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

f.   **21 U.S.C. §321(n).**  Drug Company Defendants' Reglan/metoclopramide products were misbranded in that Defendants' label and advertising failed to reveal facts material in the light of statements appearing in their label and/or because Defendants' Reglan/metoclopramide label and advertising failed to reveal important information with respect to consequences which might result from the use of Reglan/metoclopramide to which Defendants' labeling and/or advertising relates under the conditions of use prescribed in the labeling or advertising thereof and/or under such conditions of use as are customary or usual.

g.   **21 C.F.R. 314.80** and/or **21 C.F.R. 314.98**.  Drug Company Defendants violated this regulatory provision by  failing to develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA and/or by failing to promptly review and report all adverse drug experience information obtained or otherwise received by the applicant from any source, foreign or domestic, including information derived from commercial marketing experience, postmarketing clinical investigations, postmarketing epidemiological/surveillance studies, reports in the scientific literature, and unpublished scientific papers.

h.   **21 C.F.R. 314.57(e).**  Brand Defendants violated this regulatory provision by failing to revise the content of the labeling for Reglan to include warnings against the risk of tardive dyskinesia caused by long-term use of Reglan/metoclopramide.  Generic Defendant violated this statutory provision by failing to propose labeling changes and/or additional

warnings for all Reglan/metoclopramide products and to provide adequate
supporting information to justify such change to the FDA.

i.    **21 C.F.R. 314.81**.  Drug Company Defendants violated this regulatory
provision by failing to review relevant information regarding their drug
products and to submit summaries of significant new information arising
after approval of their drugs that might affect the safety, effectiveness, or
labeling of the drug product, and failed to undertake any efforts to mitigate
the risks posed by their metoclopramide products or to notify FDA that
such action was necessary or beneficial.

Plaintiffs seek all damages to which they may be justly entitled.

## VII. COUNT II -- STRICT LIABILITY

101.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully
set forth herein.

102.    Plaintiff, BARBARA METZ, claims that All Drug Company Defendants are
liable to her under the theory of strict products liability.  Defendants were at all times
relevant to this suit, and now are, engaged in the business of designing, manufacturing,
testing, marketing, and placing into the stream of commerce pharmaceuticals for sale to,
and use by, members of the public, including the Reglan/metoclopramide at issue in this
lawsuit.  The Reglan/metoclopramide manufactured by Defendants reached Plaintiff,
BARBARA METZ, without substantial change and was ingested as directed.  The
Reglan/metoclopramide was defective and unreasonably dangerous when it entered into
the stream of commerce and when used by Plaintiff, BARBARA METZ.

103.    Reglan/metoclopramide was unreasonably defective in design, considering the
utility of the product and the risk involved in its use, because as designed,
Reglan/metoclopramide could cause injuries such as those suffered by Plaintiff during

foreseeable use.  This fact was known to Defendants at the time Reglan/metoclopramide

was placed into the stream of commerce, but was not readily recognizable to an ordinary

consumer, including Plaintiff.  Nonetheless, Brand Defendants failed to write a label to

warn that Reglan/metoclopramide as designed was capable of causing serious personal

injuries such as those suffered by Plaintiff, BARBARA METZ, during foreseeable use.

Generic Defendant chose to sell a product that included a defective label that

unreasonably underestimated the danger of use and misrepresented the safe duration of

use.  These actions of Drug Company Defendants were in violation of the provisions of

federal law identified above in para. 100(a)-(f).  All Defendants failed to distribute and

alert physicians and consumers to the 2004 label change.  Such a failure to warn (both by

a failure of the CONTENT of the label from Brand Defendants, and from a failure to

COMMUNICATE the 2004 label change by All Defendants) rendered the

Reglan/metoclopramide unreasonably dangerously defective as marketed at the time that

Mrs. Metz consumed the drug.

104.    The defective and unreasonably dangerous nature of Reglan/metoclopramide

was a direct, proximate and producing cause of Plaintiff, BARBARA METZ' injuries and

damages.  Under strict products liability theories set forth in Restatement (Second) of

Torts, Pharmaceutical Defendants are liable to Plaintiffs for all damages claimed in this

case, including punitive damages.

## VIII. COUNT III -- BREACH OF WARRANTIES

105.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully

set forth herein.

106.     Defendants were at the time of the acts forming the basis of this lawsuit, and now are, merchants with respect to the Reglan/metoclopramide at issue in this lawsuit. Defendants marketed and promoted their Reglan/metoclopramide as safe and efficacious for its intended uses.  The Reglan/metoclopramide consumed by Plaintiff reached her without substantial change in its condition and was used by Plaintiff as intended by Defendants.     Defendants     expressly     and     impliedly     warranted     that     the Reglan/metoclopramide were not unreasonably dangerous and instead were merchantable and fit for its intended use by Plaintiff, BARBARA METZ.   Drug Company Defendants accompanied their metoclopramide products with written statements or affirmations of fact to which the product failed to conform, and which proximately caused Plaintiff's injuries, such as the representation that the occurrence of EPS was rare when compared to similar drugs, and that EPS occurred in 1 in 500 patients (.2%) treated with the usual adult dosage.   These express warranties also violated provisions of federal law as listed above in para. 100(a)-(f).

107.     Defendants breached these warranties (both express and implied) as the Reglan/metoclopramide was not merchantable, was unfit for its intended use, was unreasonably dangerous when comparing the benefits to the risks associated with its use, and failed to conform to written statements or affirmations of fact regarding the frequency with which EPS occur.   Brand Defendants should have corrected the false statements and misrepresentations, and Generic Defendant should have discontinued selling a product that contained representations that were inaccurate. And false  Plaintiff, BARBARA METZ, was injured as a result of these breaches of warranties.

## IX. COUNT IV -- MISREPRESENTATION AND FRAUD

108.     Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

109.     Brand Defendants, through their advertising, labeling, marketing, and sales/detail persons, made significant representations, which were false, knowing that such representations were false and/or with reckless disregard for the truth or falsity of such representations, with the intent that Plaintiff rely on such material representations; Generic Defendants intentionally benefited from these marketing efforts and chose to enter a market in which such misrepresentations were made knowing (or failing to discover) the representations that were relied upon by physicians and patients. Plaintiff, BARBARA METZ, acted in actual and justifiable reliance on such material misrepresentations and was injured as a result.

110.     In addition, and in the alternative if necessary, all Drug Company Defendants knowingly omitted and downplayed material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiff, BARBARA METZ, rely on Defendants' misrepresentations; Plaintiff, BARBARA METZ, acted in actual and justifiable reliance on Defendants' representations and was injured as a result.

111.     Defendants committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiff, BARBARA METZ, relating to the Reglan/metoclopramide at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to public interests or

public policy.

112.     Defendants misrepresented to the FDA, Plaintiff and the health care industry the safety and effectiveness of Reglan/metoclopramide and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Reglan/metoclopramide.

113.     Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known, that Reglan/metoclopramide had defects, dangers, and characteristics that were other than what they had represented to Plaintiff, BARBARA METZ, and the health care industry generally.   Specifically, Defendants misrepresented to and/or actively concealed from Plaintiff, BARBARA METZ, and the consuming public that:

    (a)     Reglan/metoclopramide had statistically significant increases in neuromuscular side effects which could result in serious injury;

    (b)     Patients on Reglan/metoclopramide should not take it more than twelve weeks;

    (c)     Reglan/metoclopramide was not fully and adequately tested for the neuromuscular side effects.

    (d)     Therapy with Reglan/metoclopramide should not exceed 12 weeks in duration, as the risks of the drug outweighed its benefit in such use.

114.     As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendants, Plaintiff Barbara Metz suffered significant and ongoing injuries and damages.  Further, because Defendants' conduct was

willful, reckless, intentional and maliciously fraudulent, Plaintiffs are entitled to an award of exemplary damages.

## X. COUNT V -- NEGLIGENCE PER SE

115.     Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

116.     The product label and package insert for Reglan/metoclopramide is misbranded within the meaning of 21 U.S.C. § 352(a) and (f) because it was false and misleading and failed to give adequate warnings and directions for use by physicians who prescribe Reglan/metoclopramide.   Because the Defendants each had a statutory duty under 21 U.S.C. § 352(a) and (f) not to misbrand Reglan/metoclopramide and because each of them violated this duty, they were guilty of negligence per se.   These duties owed to the plaintiff and by every drug consumer by both the brand defendants and the generic defendants.   In addition, and more particularly, because all Defendants knew, or should have known, that physicians commonly prescribed Reglan/metoclopramide for long-term use, beyond the 12 week intended use that was approved by the FDA, pursuant to 21 CFR 201.128, long-term use became an "intended use" which required Brand  Defendantsto provide adequate labeling for such a drug which accords with such other uses to which the article was commonly prescribed.   Brand Defendants' failure to adequately write a warning about the magnitude of the risk associated with long-term use constitutes negligence per se.   Generic Defendants choice to market the drug with the defective label was a violation of the same obligation to not sell a drug that is misbranded.   Defendants' negligence per se proximately caused injury to Plaintiff, Barbara Metz, as described more

fully herein. Those additional violations of provisions of federal law appearing in para. 100 are included herein by reference.

## XI. LOSS OF CONSORTIUM

117.     All allegations above are re-alleged and incorporated by reference.

118.     As a proximate result of smoking the defective cigarettes sold and placed on the market, each Defendant caused additional and separate damages to DONALD METZ as the spouse of the BARBARA METZ for loss of the comfort, companionship, society, support, and services of the respective spouse.

## XII. PUNITIVE DAMAGES AGAINST ALL DEFENDANTS

119.     Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

120.     Plaintiffs would further show that the negligent acts and/or omissions of Defendants, as set forth above, constitute an entire want of care so as to indicate that the acts and/or omissions in question were the result of conscious indifference and/or malice so as to give rise to the award of exemplary damages.

121.     Plaintiffs would further show that the negligent acts and/or omissions of Defendants, as set forth above, constitute an act or omission,

      (a)     which, when viewed objectively from the standpoint of Defendants, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiffs, and

      (b)     of which Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs.

The gross negligence of the Defendants was a proximate cause of the injuries and damages suffered by Plaintiffs.

## XIII. DAMAGES

122.    As a direct and proximate result of the above-described acts and omissions of Defendants, Plaintiffs have incurred actual damages in excess of $75,000.00, including but not limited to the following:

(a)    Reasonable and necessary medical expenses incurred in the past;

(b)    Reasonable and necessary medical expenses reasonably likely to     be incurred in the future;

(c)    Conscious physical pain and suffering experienced in the past;

(d)    Conscious physical pain and suffering reasonably likely to be experienced in the future;

(e)    Mental anguish in the past;

(f)    Mental anguish likely to be experienced in the future;

(g)    Physical disfigurement in the past;

(h)    Physical disfigurement likely to be experienced in the future;

(i)    Physical impairment in the past;

(j)    Physical impairment likely to be experienced in the future;

(k)    Pre and post-judgment interest at the lawful rate;

(l)    Exemplary damages; and

(m)    Such other applicable damages as the Court deems appropriate.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, BARBARA METZ and DONALD METZ, pray that

upon final determination of these causes of action Plaintiffs receive a judgment against

Defendants,  Wyeth, Schwarz and Actavis as follows:

    (a)    Actual damages as alleged, jointly and/or severally against Defendants, in excess of the jurisdictional minimum;

    (b)    Punitive damages alleged against Defendants, including Plaintiffs' attorney fees, in an amount to be determined;

    (c)    Costs of court and reasonable attorney fees necessary for preparation of this case for trial;

    (d)    Prejudgment interest at the highest rate allowed by law;

    (e)    Interest on the judgment at the highest legal rate from the date of judgment until collected; and

    (f)    All such other and further relief at law and in equity to which Plaintiffs may show themselves to be justly entitled.

## XV. JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED this **7th** day of November, 2011.

Respectfully submitted,

*/s/ Terrence J. Donahue*
DANIEL J. MCGLYNN
Louisiana State Bar No. 17051
TERRENCE J. DONAHUE, JR.
Louisiana State Bar No. 32120
**MCGLYNN, GLISSON & MOUTON**
340 Florida Street
Baton Rouge, LA  70801
(225) 344-3555 Telephone
(225) 344-3666 Facsimile

Email: danny@mcglynnglisson.com
Email: joe@mcglynnglisson.com

WILLIAM B. CURTIS
Texas State Bar No. 00783918
MICHAEL S. WILSON
Texas State Bar No. 24008285
CURTIS LAW GROUP
3100 Monticello Avenue, Suite 500
Dallas, TX  75205
(214) 890-1000 Telephone
(214) 890-1010 Facsimile
Email: bcurtis@curtis-lawgroup.com
Email: mwilson@curtis-lawgroup.com

Brent R. Bigger, Esq.
Florida State Bar no. 823961
ABRAHAMSON & UITERWYK
900 West Platt Street
Tampa, FL 33606
(813) 222-0500 Telephone
(813) 221-4738 Facsimile
Email: bbiger@uiterwyklaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on November 7, 2011, and is available for viewing and downloading from the ECF system.  Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D).

Hildy M. Sastre
Mihai M. Vrasmasu
Shook, Hardy & Bacon, LLP
201 S.Biscayne Blvd.
Miami, FL  33131
*Attorneys for Wyeth, LLC and*
*Schwarz Pharma, Inc.*

C. Howard Hunter
Ethen R. Shapiro
Hill, Ward & Henderson, P.A.
101 E. Kennedy Blvd., Ste 3700
Tampa, FL  33601-2231
*Attorneys for Actavis Elizabeth, LLC*

Andrew J. Calica
Mayer Brown
1675 Broadway
New York, NY  10019
*Attorney for Schwarz Pharma, Inc.*

Richard A. Dean
Tucker Ellis & West, LLP
925 Euclid Avenue, Ste 1150
Cleveland, OH  44115
*Attorney for Actavis Elizabeth, LLC*

*/s/ Terrence J. Donahue*
Terrence J. Donahue